THE FRED H. RICE.[1]

CLOSE et al. v. THE FRED H. RICE.

*(District Court, S. D. New York. December 18, 1889.)*

SHIPPING—DAMAGE TO CARGO—STRANDING.

A schooner, bound from Mattawan to New York, took the more difficult course through the Kills, instead of going outside and through the Narrows. While beating through the Kill van Kull she was overtaken and passed by a tow, to avoid which she luffed, lost her headway, and was carried by the eddy tide on the rocks, and damaged her cargo. In an action by the cargo owner to recover for such damage, *held*, that the schooner took the additional risks to be expected in the passage of the Kills; and, as the channel where she went ashore was wide enough for her to have kept off the rocks, notwithstanding the presence of a passing tow, and as the tide and the eddy were well known, the stranding was not unavoidable, and the schooner was answerable for the damage.

In Admiralty. Action for damage to cargo, by alleged negligent stranding.

*Halcyon M. Close*, for libelants.

*A. B. Stewart*, for claimant.

BROWN, J. The libel is filed to recover damages to a cargo of brick loaded on the schooner F. H. Rice, through the stranding of the schooner near Constable point, while coming out of the Kills, in November, 1888. The schooner had sailed from Mattawan, and, as the libelants contend, should have taken the outside passage, through the Narrows, instead of coming through the Kills, where the passage is more hazardous, through the narrowness of the channel and the greater liability to obstruction by long tows. The weather was good, and there is evidence that in such weather the passage by the Narrows is the most usual course. The master's testimony is to the effect that the wind was northeast, and that in beating out of the Kills he was overtaken by a tug, having a tow upon a hawser, in all some seven or eight hundred feet long; that he had passed in front of the tow upon several tacks, going on his last tack to the north-west, about 100 yards in front of the tug; that when he afterwards tacked towards the south-east he was unable to proceed without running into the tow, and therefore luffed, and, losing his headway, dropped anchor, but was carried by the eddy tide on the rocks on the north shore. I cannot accept this account as sufficient to throw upon the cargo the damage occasioned by stranding. In selecting the more hazardous passage of the Kills, instead of going by the Narrows, the master took the additional risks to be expected in the Kills. He had full notice of the course of the tow; and, if the tow was so far on the northerly side of the channel as to leave insufficient room to navigate the schooner, he should not have crossed the tug's course on the previous tack, but have kept on the southerly side. The channel there, as shown both by the chart and in cases often before me, was wide enough

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

to keep the vessel off the rocks on either side, notwithstanding the presence of a passing tow. The course of the tide and the eddy were also well known, and it was the business of the schooner, at her peril, to navigate with reference to them. There is no probability that there was any material change in the course of the tug to the northward, to the prejudice of the schooner. The tug's proper course, for quite a distance beyond the point of stranding, was nearly in the center of the channel, in order to pass to the southward of the buoy at Robbins Reef light. The mistake of the schooner was—*First*, in unnecessarily taking the greater risk of a passage by the Kills; *second*, in crossing the tug's course to the northward, if the tow was on the northerly side of the channel; or, *third*, if the tow was not on the northerly side of the channel, in running so far into the eddy tide and not luffing, and in not dropping anchor sooner, and lowering her sails before getting near the rocks. There is no fault on the part of the cargo. I cannot find the stranding unavoidable, and the schooner must therefore answer for the damage.